IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| BEVERLY KYE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 5:09cv00390  SWW |
| | * | |
| | * | |
| | * | |
| SCHINDLER ELEVATOR CORPORATION | * | |
| and SCHINDLER ELEVATOR COMPANY | * | |
| f/k/a WESTINGHOUSE ELEVATOR CO. | * | |
| and JOHN DOES 1-5, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

Plaintiff Beverly Kye brings this negligence action against Schindler Elevator Corporation, Schindler Elevator Company f/k/a Westinghouse Elevator Co. (collectively, Schindler), and John Does 1-5, for damages she allegedly sustained in an elevator accident in the Shorey Building on the University of Arkansas for Medical Sciences (UAMS) campus.  The following motions are before the Court: (1) Schindler's motion to exclude testimony of plaintiff's expert [doc.#17]; and (2) Schindler's motion for summary judgment [doc.#18]. Plaintiff has responded in opposition to Schindler's motions and Schindler has filed a reply to plaintiff's responses.  For the reasons that follow, the Court denies Schindler's motion to exclude testimony of plaintiff's expert and denies Schindler's motion for summary judgment.[1]

---

[1] Plaintiff states that "Separate Defendants, John Does 1-5, are persons or entities having direct or vicarious responsibility for the safety of elevator patrons and adherence to safety regulation and policy, and for the maintenance, care, clean-up, design, and construction of the elevator located at the Shorey Building on the UAMS campus." Am. Compl. at ¶ 3. By Order dated January 26, 2010 [doc.#8], the Court gave plaintiff sixty (60) additional days in which to serve all defendants. However, there is no indication in the record that John Does 1-5 have ever been served with process or even identified and the time for conducting discovery has long since expired.  Accordingly, separate defendants John Does 1-5 are hereby *sua sponte* dismissed from this action leaving Schindler as the sole remaining defendant.

I

Plaintiff was employed by UAMS in its housekeeping department and was assigned to the Shorey Building on the UAMS campus.  Plaintiff claims that on September 14, 2006, while performing her cleaning duties in the Shorey Building, she was injured in an elevator that Schindler manufactured and for which Schindler was responsible for maintaining, inspecting, and repairing.

Plaintiff gives essentially three different versions of the accident at issue.  In her amended complaint, plaintiff states that upon entering the elevator in the Shorey Building, the elevator, without warning, dropped suddenly and rapidly and fell for approximately 3-4 floors until coming to rest at the ground floor level.  Am. Compl. at ¶ 16.  She states that "[s]aid elevator fell to the ground causing Plaintiff injuries to her back, ankle and teeth."  *Id*. [2]

In her deposition, plaintiff states that she "mashed the elevator button to get on the elevator" on the 5th floor of the Shorey Building and that "the door came open and I stepped in and the floor wasn't there."  Kye Depo. at 14.  She states that there "might have been about [a] three or four" foot difference between the floor of the elevator and the floor of the hallway and that "[i]t sounded like maybe the elevator was on a chain or something, because it was jerking back and forth, up and down, when I was on there."  *Id*. at 15, 19.  Plaintiff states that "[t]he elevator came back up, but it didn't come up to the floor" and that an individual "got down in the elevator with me and helped me out."  *Id*. at 19.

---

[2] Schindler's expert, Ronald E. Creak, issued an expert report dated January 24, 2011, it which he states that it was first reported for purposes of worker's compensation with respect to plaintiff's accident that "employee twisted foot when trying to get on elevator" and, later, that "elevator fell from the 5th floor to the ground."

Finally, plaintiff signed an injury and incident report on the day of the accident that was filled out by her supervisor, Derrick Chambers, in which it is stated that plaintiff "was about to step on the elevator on the 5th floor of Shorey" and that "when she placed her right foot on the floor of the elevator, it suddenly dropped a foot then it jumped back flush with the floor causing her to fall and twist her ankle and [roll?] her foot." UAMS Employee/Student/Visitor Injury and Incident Report. In response to a question at her deposition asking her if that is what happened, plaintiff responded, "Yes. That happened, too, and I hurt my back and everything." Kye Depo. at 44.[3]

Both plaintiff and Schindler have retained experts. Plaintiff's expert, John S. Morse, has a Ph.D. in mechanical engineering. Morse stated in his preliminary expert report dated August 19, 2010 that it his opinion that the incident was caused by a mis-leveling of the elevator. He notes that the contract between Schindler and UAMS required that the elevators be level to within 3/8 inch and that UAMS elevator records indicate the elevator had previous leveling issues. Morse states that it is his opinion that Schindler was negligent and that this negligence caused the incident.

Schindler's expert, Ronald E. Creak, is a Qualified Elevator Inspector. Creak stated in his report dated January 24, 2011 that "it is a technical certainty that the subject elevator came to a stop below the 5th floor landing outside of its leveling zone and within its mechanical door zone." He states that it is more probable than not that the cause of the event experienced by plaintiff was the result of a foreign object lodged between the car door guide and the car door sill groove and that this was not a maintenance issue for which Schindler was responsible. He notes

---

[3] Plaintiff states in her brief in support of her response to Schindler's motion to exclude expert testimony and motion for summary judgment that she "intends to request leave of the court to amend her Complaint so as to conform to the proof as testified in her deposition."

that had plaintiff been more observant of her surroundings after the elevator doors had opened, she would have seen the misalignment of the elevator floor with the 5th floor landing and could have chosen to not enter the elevator, or in the alternative, taken greater care in doing so.

II

Schindler moves to exclude the testimony of plaintiff's expert, John Morse, on grounds that while Morse has a degree in mechanical engineering, he has absolutely no applicable or appropriate training, experience, or other equivalent knowledge that would qualify him to assist the jury in understanding elevators or what "went wrong," if anything, in this matter. Schindler argues his testimony must therefore be rejected under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593-94 (1993).

A

Under Federal Rule of Evidence 702, an expert opinion is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." When determining the reliability of an expert's opinion, the district court examines the following four non-exclusive factors: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'" *Presley v. Lakewood Engineering and Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert,* 509 U.S. at 593-94). The above listed factors are not exhaustive or limiting, and a court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. *Id*. (citation omitted). In addition, the district court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed

4

expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Id.* (internal quotation marks and citation omitted). While weighing these factors, the district court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge. *Id.* If the court is satisfied with the expert's knowledge, skill, experience, training, or education, and the expert's testimony is reasonably based on that expertise, the court does not abuse its discretion by admitting the testimony. *Weitz Co. v. MH Washington*, 631 F.3d 510, 527 (8th Cir. 2011) (internal quotation marks and citation omitted). Nevertheless, the district court must exclude expert testimony if it is so fundamentally unreliable that it does not assist the jury; otherwise, the factual basis of the testimony goes to the weight of the evidence. *Id.*[4]

B

Schindler argues that Morse does not know what may or may not have occurred with the elevator on the date of the alleged incident of September 14, 2006 or upon the two other dates he alleges it to have "malfunctioned," those being August 11, 2006 and December 15, 2006, and that Morse did not even perform a cursory inspection or examination of this elevator or any of its pertinent component parts; he simply looked at the elevator carriage, pushed the up and down button, rode the elevator up and down, took some pictures of the interior cab of the elevator and measured the length and width of the cab. Schindler argues Morse did not examine and indeed does not even know what kind of leveling devices are or were present upon this elevator, what

---

[4] "When a district court is satisfied with an expert's education, training, and experience, and the expert's testimony is reasonably based on that education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing." *United States v. Kenyon,* 481 F.3d 1054, 1061 (8th Cir.2007).

kind or whether or not it had door restrictors, or what kind or whether the elevator had door zones, and that he did not inspect the track and hoistway upon which the elevator operates, did not inspect the machine room above the elevator where the essential component parts that make the elevator travel up and down are located, and did not inspect the pit area above which the elevator comes to rest on the ground floor.  Schindler states that while these omissions and lack of knowledge are by themselves sufficient to disqualify Morse as a witness in this case, because of the Arkansas regulatory scheme concerning elevators and elevator safety, Morse is also disqualified from testifying because he possesses none of the requirements to inspect, maintain, repair, replace, install, or upgrade an elevator in Arkansas.   Schindler notes that Arkansas has rigorous statutory and regulatory standards which must be met by anyone desiring to become an elevator inspector or an elevator mechanic, and that absent these qualifications and certifications, not even a mechanical engineer is qualified to testify concerning what makes elevators work and what can go wrong with them.

     Plaintiff, however, states that Morse has testified in his deposition and in his Affidavit that this case is simply a matter of whether Schindler breached their duties to maintain the elevator in a safe manner.  Plaintiff states that Morse bases his opinion that Schindler failed to maintain the elevator in a safe manner that would prevent mis-leveling accident on his investigation and knowledge of the facts of this case and notes that Morse has been accepted by Arkansas courts as being qualified to testify as to elevator safety issues and has so testified on at least four occasions in Arkansas.

     The Court has carefully considered the *Daubert* factors and Fed.R.Evid. 702 and is satisfied with Morse's knowledge, skill, experience, training, and education, and finds that Morse's testimony is reasonably based on that expertise.  The Court determines that any

deficiency in Morse's methodology and/or the extent of his knowledge of what makes elevators work and what can go wrong with them is a fact that bears more on the weight of Morse's testimony, rather than the fundamental reliability of his analysis.  *See Weitz*, 631 F.3d at 528; *see also Daubert,* 509 U.S. at 596 (noting that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Accordingly, the Court denies Schindler's motion to exclude the testimony of Morse.

III

Schindler moves for summary judgment on grounds that plaintiff cannot make a submissable jury case because her expert is not qualified to testify.  Schindler argues that because this Court should grant the *Daubert* motion concerning plaintiff's expert, it should likewise grant the accompanying motion for summary judgment.

The Court denies Schindler's motion for summary judgment as it has today denied its motion to exclude the testimony of plaintiff's expert.  In addition, the Court has considered the record and determines that there remain genuine issues of material fact for trial that preclude summary judgment.[5]

IV

---

[5] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or denials of his pleading, but "must come forward with 'specific facts showing ... a *genuine issue for trial*.'" *Id*. at 587 (quoting Fed.R.Civ.P. 56(e) and adding emphasis).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita,* 475 U.S. at 587 (citations omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

For the foregoing reasons, the Court denies Schindler's motion to exclude testimony of plaintiff's expert, John S. Morse [doc.#16], and denies Schindler's motion for summary judgment [doc.#18].

IT IS SO ORDERED this 4th day of May 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE